**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA IN AND FOR HILLSBOROUGH COUNTY CIVIL ACTION**

JANE DOE,

Plaintiff(s),

vs.

CASE NO.:
DIVISION:

RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, RASIER-DC, LLC, AND UBER TECHNOLOGIES, INC,

Defendant(s).

---

## COMPLAINT

**COMES NOW**, Plaintiff, JANE DOE, by and through their undersigned attorney, and sues Defendants, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, RASIER-DC, LLC, AND UBER TECHNOLOGIES, INC and RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, RASIER-DC, LLC, AND UBER TECHNOLOGIES, INC and alleges:

## GENERAL ALLEGATIONS

1. That this is an action for damages in excess of Fifty Thousand and NO/100 Dollars ($50,000.00).

2. That at all times pertinent to this action, Plaintiff, JANE DOE, was an adult female who resides in HILLSBOROUGH County, Florida.

3. That at all times pertinent to this action, Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, was a Delaware corporation that was authorized to do business in the state of Florida and was in fact, engaging in business in Hillsborough County, FL.

4. That at all times pertinent to this action, Defendant, RASIER-DC, LLC, was a Delaware corporation that was authorized to do business in the state of Florida and was in fact,

engaging in business in Hillsborough County, FL.

5. That at all times pertinent to this action, Defendant, UBER TECHNOLOGIES, INC., was a Delaware corporation that was authorized to do business in the state of Florida and was in fact, engaging in business in Hillsborough County, FL.

6. That the causes of action alleged herein accrued in Hillsborough County, Florida.

7. That on or about June 13, 2022, Plaintiff, Jane Doe utilized the Uber ride sharing application and service to be transported from near Hyde Park, in Tampa, FL in Hillsborough County to her home which was also located in Hillsborough County.

8. Plaintiff utilized the Uber ride sharing application with the assistance of her friends, as Plaintiff was intoxicated. An Uber driver and Uber Employee Jason Delarosa-Mendez picked up the Plaintiff and transported the Plaintiff to her residence. During the ride, Jason Delarosa-Mendez engaged in sexual and physical contact with Plaintiff. The sexual and physical contact by Jason Delarosa-Mendez with Plaintiff continued during the ride and Jason Delarosa-Mendez followed Plaintiff into her house and Mr. Delarosa-Mendez sexually assaulted Plaintiff. Plaintiff was legally intoxicated from the time she entered Mr. Delarosa-Mendez's vehicle and she remained legally intoxicated throughout the sexual assault. Because Plaintiff was legally intoxicated she was not able to legally consent to any sexual contact. Mr. Delarosa-Mendez was aware of Plaintiff's intoxication as it was stated to him as the reason he was asked to drive Plaintiff home in the first place, and Plaintiff repeatedly informed Mr. Delarosa-Mendez that she was intoxicated throughout the duration of the ride.

**COUNT I**
**(GENERAL NEGLIGENCE OF RASIER (FL) LLC D/B/A UBER AND RASIER, LLC)**

9. Plaintiff adopts all allegations contained in paragraphs 1 through 8 as if fully set

forth herein.

10. That on or about June 13, 2022, Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, operated and maintained a motor vehicle based ride-hailing/ride-sharing platform and application at the aforementioned time and place.

11. By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiff.

12. Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014. Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

13. Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

14. Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to Uber and the authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

15. At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Uber as a safe means of transportation. In doing so, Uber failed to warn passengers, including Plaintiffs, of the possibility of being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver.

16. At the time Plaintiff was assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

17. Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers. Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even consider law enforcement requests for information. Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information. Uber's policy of noncooperation discourages police agencies from making recommendations to State Attorneys' offices to file complaints against Uber drivers and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

18. When hiring new drivers, Uber does not verify driver identities with biometric background checks. Uber does not correct for false negatives created by its name-based screening procedures. Uber does not provide industry-standard background checks which would provide the most comprehensive means of screening applicant drivers. Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

19. Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

20. For the above reasons and others, Uber breached its duty of reasonable care to Plaintiffs.

21. As a legal and direct result of Uber's aforementioned conduct and omissions,

Plaintiff was sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by the above Uber Driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The assault on Plaintiff caused them to suffer psychological and physical harm from which some or all may never fully recover.

22. As a direct and legal result of Uber's general negligence, Plaintiff suffered damages, both economic and general, non-economic damages.

23. WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

**COUNT II**
**(AGAINST RASIER (FL) LLC D/B/A UBER AND RASIER, LLC,**
**– COURSE AND SCOPE – VICARIOUS LIABILITY)**

24. Plaintiff adopts all allegations contained in paragraphs 1 through 22 as if fully set forth herein.

25. Uber is vicariously liable for the torts of its drivers through the theories of *respondeat superior*, nondelegable duties, agency, and ostensible agency. Uber's liability for the acts of its drivers is not contingent upon the classification of its drivers as employees.

26. Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its employees committed within the scope of employment. The modern rationale for the theory is that an employer who profits from an enterprise which, through the torts of his employees, causes harm to others should bear the costs of the injury instead of the innocent injured Plaintiffs.

27. Uber profits from transporting vulnerable passengers late at night. Uber encourages intoxicated passengers to use its services. At the same time, Uber does not take reasonable steps to protect its passengers or warn them of the dangers of riding with Uber. Uber should bear the costs of injuries that result from torts such as sexual assault, kidnapping, and rape, not the victims of Uber's negligence, willful wrongdoing and intentional omissions made at the expense of passenger safety.

28. Uber drivers are employees and agents of Uber. Uber reserves the right to control the activities of Uber drivers. Uber controls the prices charged to customers, controls contact with the customer base, controls the ability of a driver to see where he will be driving before he accepts a ride, and reserves the right to terminate drivers with or without cause.

29. The kidnapping, sexuall assault, sexuall battery, rape, false imprisonment, stalking, harassment, and/or other attack Plaintiff suffered was perpetrated by the Uber Driver within the scope of their employment and authority. The kidnapping, sexual assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened Uber driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers.

30. Uber may maintain that its drivers are contractors and not employees. Nevertheless, whether Uber drivers are characterized as contractors, employees or agents, Uber has a non- delegable duty to transport its passengers safely.

31. The doctrine of nondelegable duty recognizes that for public policy reasons, certain duties cannot be delegated to a third party. It operates to ensure that when a harm occurs the injured party will be compensated by the party whose activity caused the harm and who may therefore properly be held liable for the acts of his agent, whether the agent was an employee or

an independent contractor. The doctrine recognizes that an entity may not delegate its duties to a contractor in order to evade its own responsibilities. This is especially so when allowing delegation would incentivize the employers to hire incompetent contractors in order to further the employer's pecuniary interests.

32. In advertising to passengers, including Plaintiff, that Uber provides them a safe ride to their destinations, and by profiting off women who use Uber for that very purpose but then are attacked, Uber has a duty to its passengers that cannot be delegated. To allow Uber to delegate the liability for the assaults committed by its drivers to anyone else would encourage Uber to continue to utilize the cheapest, fastest, and most haphazard safety procedures. Uber would be disincentivized from hiring only competent drivers, since the more drivers Uber has, the more money Uber makes.

33. Further, Uber drivers act as agents of and operate as extensions of Uber. Uber drivers represent Uber's business and further Uber's pecuniary interests.

34. Uber drivers display the Uber logo when interacting with passengers, and in many cases Uber drivers are the only people with whom Uber's passengers have direct contact. Uber drivers provide the service that Uber claims to provide-- transportation.

35. By allowing Uber drivers to represent Uber's business, Uber creates the impression that its drivers, including Uber Driver, were Uber's employees and/or agents.

36. Plaintiff reasonably believed that their Uber driver was an employee or agent of Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm as a result of their contact with the driver.

37. For these reasons and others, Uber is vicariously liable for the tortious acts of its drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or

contractors of Uber.

38. As a direct and legal result of the Uber driver's tortious conduct, Plaintiff was kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which Plaintiff may never fully recover.

39. That at all pertinent times on or about June 13, 2022, Jason Delarosa-Mendez, assaulted Plaintiff, while Mr. Delarosa-Mendez was in the course and scope of his employment with Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC.

40. As a direct and legal result of Jason Delarosa-Mendez tortious conduct for which Uber is legally liable, Plaintiff has suffered economic and general, non-economic damages according to proof.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

## COUNT III
## (AGAINST RASIER (FL) LLC D/B/A UBER AND RASIER, LLC– NEGLIGENT HIRING, RETENTION, AND SUPERVISION)

41. Plaintiff adopts all allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42. Uber engaged and retained or otherwise employed Uber drivers who have sexually assaulted Plaintiff, and other similarly situated persons have been assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked and as described above.

43. Uber did not interview, check the references of, provide training to, or advise Jason Delarosa-Mendez of any anti-sexual assault policies when hiring him. Uber had no reasonable basis for believing Jason Delarosa-Mendez in general was fit to drive vulnerable women around, and failed to use reasonable care in determining whether each driver was fit for the task. Uber should have known of the unfitness of Jason Delarosa-Mendez and other Uber drivers involved in the assaults described herein but failed to use reasonable care to discover their unfitness and incompetence.

44. Despite failing to reasonably endeavor to investigate the incompetence of Uber drivers, including the one who harmed Plaintiff, for transporting vulnerable and or intoxicated women in a moving vehicle, Uber hired said drivers to do exactly that.

45. Uber knew or should have known that assigning the task of transporting vulnerable passengers to an inadequately screened driver created an unreasonable risk of harm to Uber's passengers, including Plaintiff, particularly when Uber had been on notice of the string of sexual assaults committed by Uber's drivers.

46. Uber failed to employ measures to adequately supervise its drivers.

47. Uber failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

48. Uber was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiff and other vulnerable female passengers traveling alone.

49. The Uber driver who assaulted Plaintiff was and/or became, unfit to perform the work for which he was hired as he improperly and illegally took advantage of Plaintiff when they attempted to use the service for a safe ride to their destinations, thereby causing psychological and or physical harm.

50. Because of the Uber driver's unfitness to perform the task of transporting Plaintiff, Plaintiff was sexually assaulted, harassed, sexually battered, raped, and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety.

51. Uber's negligence in hiring, retaining, and or supervising Uber drivers, including the driver who harmed Plaintiff, caused Plaintiff to be sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by their Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which they may never fully recover.

52. As a direct and legal result of Defendants' negligent supervision, hiring, and retention of Uber drivers, including the driver who harmed Plaintiff, Plaintiff have suffered damages, both economic and general, non-economic damages according to proof.

53. At all times relevant, up to and including June 13, 2022, Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, owed to the public and to Plaintiff, JANE DOE, the duty to exercise reasonable care and diligence in the hiring, employing, supervising, training, retaining, dispatching, and entrustment of their drivers.

54. Defendants were negligent in their above referenced duties. Defendants did not exercise due care in the selection, hiring, training, supervising, dispatching, and/or retention of their drivers, as the driver in question, did not possess the appropriate qualifications, training,

and/or driving history to perform their job adequately, reasonably, and safely. The driver's qualifications, training, and/or driving history would be easily discoverable if Defendant exercised due care. Additionally, it was known that Jason Delarosa-Mendez would be driving as part of his employment.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

**COUNT IV**
**(AGAINST RASIER (FL) LLC D/B/A UBER AND RASIER, LLC– NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

55. Plaintiff adopts all allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56. For several years prior to Plaintiff being sexually assaulted by Jason Delarosa-Mendez, Uber was fully aware that other female passengers had been sexually assaulted and raped by other Uber drivers. Since at least 2014, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of the criminal conduct of drivers acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

57. Uber made a conscious decision not to implement procedures that would effectively screen its drivers and monitor its drivers to identify and terminate drivers who were sexual predators.

58. Safety precautions such as enhanced background checks, biometric fingerprinting, job interviews, electronic monitoring systems, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage. Because of this, Uber decided not to implement such precautions and instead continues to place its passengers at greater risk of sexual assault and rape by Uber's own drivers.

59. Additional safety precautions that Uber chose not to make include but are not limited to: ongoing monitoring of Uber drivers through available technology including cameras and GPS; a zero tolerance policy for drivers who deviate from expected behavior by leaving the vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer service representatives. Uber chose not to implement such precautions, nor did it warn passengers of the risk of being sexually assaulted in light of the fact that these safety precautions had not been implemented.

60. In failing to take these and other safety precautions designed to protect passengers from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently inflicting emotional harm upon Plaintiff, and acted recklessly and in conscious disregard of their safety.

61. Defendant's actions caused an impact to Plaintiff in the most direct and personal way possible, a sexual assault.

62. As a direct and legal result of Uber's negligent infliction of emotional distress, Plaintiff has suffered damages, including emotional and psychological distress, as well as economic, general, and non-economic damages.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER (FL) LLC D/B/A UBER AND RASIER, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

**COUNT V**
**(GENERAL NEGLIGENCE OF RASIER-DC, LLC)**

63. Plaintiff adopts all allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64. That on or about June 13, 2022, Defendant, RASIER-DC, LLC, operated and maintained a motor vehicle based ride-hailing/ride-sharing platform and application at the aforementioned time and place.

65. By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and in particular its own passengers, including Plaintiff.

66. Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014. Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

67. Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

68. Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to Uber and the authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

69. At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Uber as a safe means of transportation. In doing so, Uber failed to warn passengers, including Plaintiffs, of the possibility of being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver.

70. At the time Plaintiff was assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

71. Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers. Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even consider law enforcement requests for information. Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information. Uber's policy of noncooperation discourages police agencies from making recommendations to State Attorneys' offices to file complaints against Uber drivers and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

72. When hiring new drivers, Uber does not verify driver identities with biometric background checks. Uber does not correct for false negatives created by its name-based

screening procedures. Uber does not provide industry-standard background checks which would provide the most comprehensive means of screening applicant drivers. Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

73. Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

74. For the above reasons and others, Uber breached its duty of reasonable care to Plaintiffs.

75. As a legal and direct result of Uber's aforementioned conduct and omissions, Plaintiff was sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by the above Uber Driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The assault on Plaintiff caused them to suffer psychological and physical harm from which some or all may never fully recover.

76. As a direct and legal result of Uber's general negligence, Plaintiff suffered damages, both economic and general, non-economic damages.

77. WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER-DC, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

**COUNT VI**
**(AGAINST RASIER-DC, LLC,**
**– COURSE AND SCOPE – VICARIOUS LIABILITY)**

78. Plaintiff adopts all allegations contained in paragraphs 1 through 77 as if fully set

forth herein.

79. Uber is vicariously liable for the torts of its drivers through the theories of *respondeat superior*, nondelegable duties, agency, and ostensible agency. Uber's liability for the acts of its drivers is not contingent upon the classification of its drivers as employees.

80. Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its employees committed within the scope of employment. The modern rationale for the theory is that an employer who profits from an enterprise which, through the torts of his employees, causes harm to others should bear the costs of the injury instead of the innocent injured Plaintiffs.

81. Uber profits from transporting vulnerable passengers late at night. Uber encourages intoxicated passengers to use its services. At the same time, Uber does not take reasonable steps to protect its passengers or warn them of the dangers of riding with Uber. Uber should bear the costs of injuries that result from torts such as sexual assault, kidnapping, and rape, not the victims of Uber's negligence, willful wrongdoing and intentional omissions made at the expense of passenger safety.

82. Uber drivers are employees and agents of Uber. Uber reserves the right to control the activities of Uber drivers. Uber controls the prices charged to customers, controls contact with the customer base, controls the ability of a driver to see where he will be driving before he accepts a ride, and reserves the right to terminate drivers with or without cause.

83. The kidnapping, sexuall assault, sexuall battery, rape, false imprisonment, stalking, harassment, and/or other attack Plaintiff suffered was perpetrated by the Uber Driver within the scope of their employment and authority. The kidnapping, sexual assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened Uber

driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers.

84. Uber may maintain that its drivers are contractors and not employees. Nevertheless, whether Uber drivers are characterized as contractors, employees or agents, Uber has a non- delegable duty to transport its passengers safely.

85. The doctrine of nondelegable duty recognizes that for public policy reasons, certain duties cannot be delegated to a third party. It operates to ensure that when a harm occurs the injured party will be compensated by the party whose activity caused the harm and who may therefore properly be held liable for the acts of his agent, whether the agent was an employee or an independent contractor. The doctrine recognizes that an entity may not delegate its duties to a contractor in order to evade its own responsibilities. This is especially so when allowing delegation would incentivize the employers to hire incompetent contractors in order to further the employer's pecuniary interests.

86. In advertising to passengers, including Plaintiff, that Uber provides them a safe ride to their destinations, and by profiting off women who use Uber for that very purpose but then are attacked, Uber has a duty to its passengers that cannot be delegated. To allow Uber to delegate the liability for the assaults committed by its drivers to anyone else would encourage Uber to continue to utilize the cheapest, fastest, and most haphazard safety procedures. Uber would be disincentivized from hiring only competent drivers, since the more drivers Uber has, the more money Uber makes.

87. Further, Uber drivers act as agents of and operate as extensions of Uber. Uber drivers represent Uber's business and further Uber's pecuniary interests.

88. Uber drivers display the Uber logo when interacting with passengers, and in many

cases Uber drivers are the only people with whom Uber's passengers have direct contact. Uber drivers provide the service that Uber claims to provide-- transportation.

89. By allowing Uber drivers to represent Uber's business, Uber creates the impression that its drivers, including Uber Driver, were Uber's employees and/or agents.

90. Plaintiff reasonably believed that their Uber driver was an employee or agent of Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm as a result of their contact with the driver.

91. For these reasons and others, Uber is vicariously liable for the tortious acts of its drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or contractors of Uber.

92. As a direct and legal result of the Uber driver's tortious conduct, Plaintiff was kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which Plaintiff may never fully recover.

93. That at all pertinent times on or about June 13, 2022, Jason Delarosa-Mendez, assaulted Plaintiff, while Mr. Delarosa-Mendez was in the course and scope of his employment with Defendant, RASIER-DC, LLC.

94. As a direct and legal result of Jason Delarosa-Mendez tortious conduct for which Uber is legally liable, Plaintiff has suffered economic and general, non-economic damages according to proof.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER-DC, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

**COUNT VII**
**(AGAINST RASIER-DC, LLC–**
**NEGLIGENT HIRING, RETENTION, AND SUPERVISION)**

95. Plaintiff adopts all allegations contained in paragraphs 1 through 94 as if fully set forth herein.

96. Uber engaged and retained or otherwise employed Uber drivers who have sexually assaulted Plaintiff, and other similarly situated persons have been assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked and as described above.

97. Uber did not interview, check the references of, provide training to, or advise Jason Delarosa-Mendez of any anti-sexual assault policies when hiring him. Uber had no reasonable basis for believing Jason Delarosa-Mendez in general was fit to drive vulnerable women around, and failed to use reasonable care in determining whether each driver was fit for the task. Uber should have known of the unfitness of Jason Delarosa-Mendez and other Uber drivers involved in the assaults described herein but failed to use reasonable care to discover their unfitness and incompetence.

98. Despite failing to reasonably endeavor to investigate the incompetence of Uber drivers, including the one who harmed Plaintiff, for transporting vulnerable and or intoxicated women in a moving vehicle, Uber hired said drivers to do exactly that.

99. Uber knew or should have known that assigning the task of transporting vulnerable passengers to an inadequately screened driver created an unreasonable risk of harm to Uber's

passengers, including Plaintiff, particularly when Uber had been on notice of the string of sexual assaults committed by Uber's drivers.

100. Uber failed to employ measures to adequately supervise its drivers.

101. Uber failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

102. Uber was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiff and other vulnerable female passengers traveling alone.

103. The Uber driver who assaulted Plaintiff was and/or became, unfit to perform the work for which he was hired as he improperly and illegally took advantage of Plaintiff when they attempted to use the service for a safe ride to their destinations, thereby causing psychological and or physical harm.

104. Because of the Uber driver's unfitness to perform the task of transporting Plaintiff, Plaintiff was sexually assaulted, harassed, sexually battered, raped, and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety.

105. Uber's negligence in hiring, retaining, and or supervising Uber drivers, including the driver who harmed Plaintiff, caused Plaintiff to be sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by their Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which they may never fully recover.

106. As a direct and legal result of Defendants' negligent supervision, hiring, and retention of Uber drivers, including the driver who harmed Plaintiff, Plaintiff have suffered damages, both economic and general, non-economic damages according to proof.

107. At all times relevant, up to and including June 13, 2022, Defendant, RASIER-DC, LLC, owed to the public and to Plaintiff, JANE DOE, the duty to exercise reasonable care and diligence in the hiring, employing, supervising, training, retaining, dispatching, and entrustment of their drivers.

108. Defendants were negligent in their above referenced duties. Defendants did not exercise due care in the selection, hiring, training, supervising, dispatching, and/or retention of their drivers, as the driver in question, did not possess the appropriate qualifications, training, and/or driving history to perform their job adequately, reasonably, and safely. The driver's qualifications, training, and/or driving history would be easily discoverable if Defendant exercised due care. Additionally, it was known that Jason Delarosa-Mendez would be driving as part of his employment.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER-DC, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

**COUNT VIII**
**(AGAINST RASIER-DC, LLC–**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

109. Plaintiff adopts all allegations contained in paragraphs 1 through 108 as if fully set forth herein.

110. For several years prior to Plaintiff being sexually assaulted by Jason Delarosa-Mendez, Uber was fully aware that other female passengers had been sexually assaulted and raped by other Uber drivers. Since at least 2014, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of the criminal conduct of drivers acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

111. Uber made a conscious decision not to implement procedures that would effectively screen its drivers and monitor its drivers to identify and terminate drivers who were sexual predators.

112. Safety precautions such as enhanced background checks, biometric fingerprinting, job interviews, electronic monitoring systems, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage. Because of this, Uber decided not to implement such precautions and instead continues to place its passengers at greater risk of sexual assault and rape by Uber's own drivers.

113. Additional safety precautions that Uber chose not to make include but are not limited to: ongoing monitoring of Uber drivers through available technology including cameras and GPS; a zero tolerance policy for drivers who deviate from expected behavior by leaving the vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer service representatives. Uber chose not to

implement such precautions, nor did it warn passengers of the risk of being sexually assaulted in light of the fact that these safety precautions had not been implemented.

114. In failing to take these and other safety precautions designed to protect passengers from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently inflicting emotional harm upon Plaintiff, and acted recklessly and in conscious disregard of their safety.

115. Defendant's actions caused an impact to Plaintiff in the most direct and personal way possible, a sexual assault.

116. As a direct and legal result of Uber's negligent infliction of emotional distress, Plaintiff has suffered damages, including emotional and psychological distress, as well as economic, general, and non-economic damages.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, RASIER-DC, LLC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

## COUNT IX
## (GENERAL NEGLIGENCE OF UBER TECHNOLOGIES, INC)

117. Plaintiff adopts all allegations contained in paragraphs 1 through 62 as if fully set forth herein.

118. That on or about June 13, 2022, Defendant, UBER TECHNOLOGIES, INC, operated and maintained a motor vehicle based ride-hailing/ride-sharing platform and application at the aforementioned time and place.

119. By providing transportation to the general public using its application and network of drivers, Uber owed a duty to act with due and reasonable care towards the public and

in particular its own passengers, including Plaintiff.

120. Uber has been on notice that its drivers have been sexually harassing, sexually assaulting, and raping its passengers since at least 2014. Uber was aware or should have been aware that some Uber drivers would continue to sexually assault, stalk, harass, kidnap, physically assault, rape, and/or otherwise attack their vulnerable Uber patrons and passengers.

121. Since learning of the sexual assaults perpetrated by its drivers, Uber never adapted or improved its safety procedures in any meaningful way.

122. Uber does not require video monitoring of its drivers that cannot be turned off, nor does it provide emergency notification to Uber and the authorities when a driver drastically veers off course from the passenger's destination, abruptly cancels the ride, or ends the ride at the intended destination but GPS data indicates the passenger remains in the car for a significant period of time.

123. At all times relevant, Uber was well aware of the dangers its drivers posed, yet it still induced, and continues to induce, the public, including Plaintiff, to rely on Uber as a safe means of transportation. In doing so, Uber failed to warn passengers, including Plaintiffs, of the possibility of being kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked by an Uber driver.

124. At the time Plaintiff was assaulted, Uber did not require sexual harassment/assault training for its drivers, nor did it have any policies in place for immediate termination if a driver engages in sexual misconduct.

125. Uber does not cooperate with the police when a driver commits an illegal sexual attack on its passengers. Despite having the express right to disclose driver information at Uber's sole discretion, Uber requires that extensive standards be met before the company will even

consider law enforcement requests for information. Even after a report of sexual assault has been made, Uber generally requires a subpoena before it will release information. Uber's policy of noncooperation discourages police agencies from making recommendations to State Attorneys' offices to file complaints against Uber drivers and provides Uber's predatory drivers with tacit assurance that their illegal attacks will not be detected by law enforcement.

126. When hiring new drivers, Uber does not verify driver identities with biometric background checks. Uber does not correct for false negatives created by its name-based screening procedures. Uber does not provide industry-standard background checks which would provide the most comprehensive means of screening applicant drivers. Uber does not invest in continuous monitoring of its drivers and is not immediately alerted when one of its drivers is implicated in criminal acts.

127. Uber does not have a consistent, reliable system for addressing passenger reports of sexual assault by its drivers and continues to let dangerous predators drive for and earn money for Uber.

128. For the above reasons and others, Uber breached its duty of reasonable care to Plaintiffs.

129. As a legal and direct result of Uber's aforementioned conduct and omissions, Plaintiff was sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by the above Uber Driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The assault on Plaintiff caused them to suffer psychological and physical harm from which some or all may never fully recover.

130. As a direct and legal result of Uber's general negligence, Plaintiff suffered damages, both economic and general, non-economic damages.

131. WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, UBER TECHNOLOGIES, INC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

## COUNT X
## (AGAINST UBER TECHNOLOGIES, INC, – COURSE AND SCOPE – VICARIOUS LIABILITY)

132. Plaintiff adopts all allegations contained in paragraphs 1 through 77 as if fully set forth herein.

133. Uber is vicariously liable for the torts of its drivers through the theories of *respondeat superior*, nondelegable duties, agency, and ostensible agency. Uber's liability for the acts of its drivers is not contingent upon the classification of its drivers as employees.

134. Under the doctrine of *respondeat superior*, Uber is responsible for the torts of its employees committed within the scope of employment. The modern rationale for the theory is that an employer who profits from an enterprise which, through the torts of his employees, causes harm to others should bear the costs of the injury instead of the innocent injured Plaintiffs.

135. Uber profits from transporting vulnerable passengers late at night. Uber encourages intoxicated passengers to use its services. At the same time, Uber does not take reasonable steps to protect its passengers or warn them of the dangers of riding with Uber. Uber should bear the costs of injuries that result from torts such as sexual assault, kidnapping, and rape, not the victims of Uber's negligence, willful wrongdoing and intentional omissions made at the expense of passenger safety.

136. Uber drivers are employees and agents of Uber. Uber reserves the right to control the activities of Uber drivers. Uber controls the prices charged to customers, controls contact with the customer base, controls the ability of a driver to see where he will be driving before he accepts a ride, and reserves the right to terminate drivers with or without cause.

137. The kidnapping, sexuall assault, sexuall battery, rape, false imprisonment, stalking, harassment, and/or other attack Plaintiff suffered was perpetrated by the Uber Driver within the scope of their employment and authority. The kidnapping, sexual assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened Uber driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers.

138. Uber may maintain that its drivers are contractors and not employees. Nevertheless, whether Uber drivers are characterized as contractors, employees or agents, Uber has a non- delegable duty to transport its passengers safely.

139. The doctrine of nondelegable duty recognizes that for public policy reasons, certain duties cannot be delegated to a third party. It operates to ensure that when a harm occurs the injured party will be compensated by the party whose activity caused the harm and who may therefore properly be held liable for the acts of his agent, whether the agent was an employee or an independent contractor. The doctrine recognizes that an entity may not delegate its duties to a contractor in order to evade its own responsibilities. This is especially so when allowing delegation would incentivize the employers to hire incompetent contractors in order to further the employer's pecuniary interests.

140. In advertising to passengers, including Plaintiff, that Uber provides them a safe ride to their destinations, and by profiting off women who use Uber for that very purpose but

then are attacked, Uber has a duty to its passengers that cannot be delegated. To allow Uber to delegate the liability for the assaults committed by its drivers to anyone else would encourage Uber to continue to utilize the cheapest, fastest, and most haphazard safety procedures. Uber would be disincentivized from hiring only competent drivers, since the more drivers Uber has, the more money Uber makes.

141. Further, Uber drivers act as agents of and operate as extensions of Uber. Uber drivers represent Uber's business and further Uber's pecuniary interests.

142. Uber drivers display the Uber logo when interacting with passengers, and in many cases Uber drivers are the only people with whom Uber's passengers have direct contact. Uber drivers provide the service that Uber claims to provide-- transportation.

143. By allowing Uber drivers to represent Uber's business, Uber creates the impression that its drivers, including Uber Driver, were Uber's employees and/or agents.

144. Plaintiff reasonably believed that their Uber driver was an employee or agent of Uber, and, relying on this belief, got in a vehicle with him in exchange for a fee and suffered harm as a result of their contact with the driver.

145. For these reasons and others, Uber is vicariously liable for the tortious acts of its drivers, regardless of whether Uber's drivers are employees, agents, apparent agents, or contractors of Uber.

146. As a direct and legal result of the Uber driver's tortious conduct, Plaintiff was kidnapped, sexually assaulted, sexually battered, raped, falsely imprisoned, stalked, harassed, and/or otherwise attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which Plaintiff may never fully recover.

147. That at all pertinent times on or about June 13, 2022, Jason Delarosa-Mendez, assaulted Plaintiff, while Mr. Delarosa-Mendez was in the course and scope of his employment with Defendant, UBER TECHNOLOGIES, INC.

148. As a direct and legal result of Jason Delarosa-Mendez tortious conduct for which Uber is legally liable, Plaintiff has suffered economic and general, non-economic damages according to proof.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, UBER TECHNOLOGIES, INC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus costs of these proceedings and hereby demands Trial by Jury on all issues so triable.

**COUNT XI**
**(AGAINST UBER TECHNOLOGIES, INC–**
**NEGLIGENT HIRING, RETENTION, AND SUPERVISION)**

149. Plaintiff adopts all allegations contained in paragraphs 1 through 94 as if fully set forth herein.

150. Uber engaged and retained or otherwise employed Uber drivers who have sexually assaulted Plaintiff, and other similarly situated persons have been assaulted, stalked, harassed, kidnapped, physically assaulted, raped, and/or otherwise attacked and as described above.

151. Uber did not interview, check the references of, provide training to, or advise Jason Delarosa-Mendez of any anti-sexual assault policies when hiring him. Uber had no reasonable basis for believing Jason Delarosa-Mendez in general was fit to drive vulnerable women around, and failed to use reasonable care in determining whether each driver was fit for

the task. Uber should have known of the unfitness of Jason Delarosa-Mendez and other Uber drivers involved in the assaults described herein but failed to use reasonable care to discover their unfitness and incompetence.

152. Despite failing to reasonably endeavor to investigate the incompetence of Uber drivers, including the one who harmed Plaintiff, for transporting vulnerable and or intoxicated women in a moving vehicle, Uber hired said drivers to do exactly that.

153. Uber knew or should have known that assigning the task of transporting vulnerable passengers to an inadequately screened driver created an unreasonable risk of harm to Uber's passengers, including Plaintiff, particularly when Uber had been on notice of the string of sexual assaults committed by Uber's drivers.

154. Uber failed to employ measures to adequately supervise its drivers.

155. Uber failed to adequately record, investigate, and respond to passenger reports of unsafe conduct such as sexual harassment and sexual assault by Uber drivers.

156. Uber was negligent in failing to terminate drivers it knew or reasonably should have known were a threat to passengers, including but not limited to Plaintiff and other vulnerable female passengers traveling alone.

157. The Uber driver who assaulted Plaintiff was and/or became, unfit to perform the work for which he was hired as he improperly and illegally took advantage of Plaintiff when they attempted to use the service for a safe ride to their destinations, thereby causing psychological and or physical harm.

158. Because of the Uber driver's unfitness to perform the task of transporting Plaintiff, Plaintiff was sexually assaulted, harassed, sexually battered, raped, and/or otherwise

attacked which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety.

159. Uber's negligence in hiring, retaining, and or supervising Uber drivers, including the driver who harmed Plaintiff, caused Plaintiff to be sexually assaulted, sexually battered, raped, harassed, and/or otherwise attacked by their Uber driver, which humiliated, degraded, violated, and robbed Plaintiff of their dignity and personal safety. The depraved attacks on Plaintiff caused Plaintiff to suffer both physical and or psychological harm from which they may never fully recover.

160. As a direct and legal result of Defendants' negligent supervision, hiring, and retention of Uber drivers, including the driver who harmed Plaintiff, Plaintiff have suffered damages, both economic and general, non-economic damages according to proof.

161. At all times relevant, up to and including June 13, 2022, Defendant, UBER TECHNOLOGIES, INC, owed to the public and to Plaintiff, JANE DOE, the duty to exercise reasonable care and diligence in the hiring, employing, supervising, training, retaining, dispatching, and entrustment of their drivers.

162. Defendants were negligent in their above referenced duties. Defendants did not exercise due care in the selection, hiring, training, supervising, dispatching, and/or retention of their drivers, as the driver in question, did not possess the appropriate qualifications, training, and/or driving history to perform their job adequately, reasonably, and safely. The driver's qualifications, training, and/or driving history would be easily discoverable if Defendant exercised due care. Additionally, it was known that Jason Delarosa-Mendez would be driving as part of his employment.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, UBER TECHNOLOGIES, INC, for a sum in excess of Fifty Thousand and NO/100 Dollars ($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

**COUNT XII**
**(AGAINST UBER TECHNOLOGIES, INC–**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

163. Plaintiff adopts all allegations contained in paragraphs 1 through 108 as if fully set forth herein.

164. For several years prior to Plaintiff being sexually assaulted by Jason Delarosa-Mendez, Uber was fully aware that other female passengers had been sexually assaulted and raped by other Uber drivers. Since at least 2014, Uber has received frequent passenger complaints about driver misbehavior, has been notified of police investigations of the criminal conduct of drivers acting within their capacity as Uber drivers, and has been the subject of numerous civil suits alleging the sexual harassment and sexual assault of Uber's passengers by Uber's drivers.

165. Uber made a conscious decision not to implement procedures that would effectively screen its drivers and monitor its drivers to identify and terminate drivers who were sexual predators.

166. Safety precautions such as enhanced background checks, biometric fingerprinting, job interviews, electronic monitoring systems, warnings to passengers of the dangers of being attacked by Uber drivers, and cooperation with law enforcement when a driver attacks a passenger would have cost Uber money and reputational damage. Because of this, Uber

decided not to implement such precautions and instead continues to place its passengers at greater risk of sexual assault and rape by Uber's own drivers.

167. Additional safety precautions that Uber chose not to make include but are not limited to: ongoing monitoring of Uber drivers through available technology including cameras and GPS; a zero tolerance policy for drivers who deviate from expected behavior by leaving the vehicle with passengers, or by deviating substantially from the assigned route; a zero-tolerance program for sexual assault and guidelines mandating immediate termination; creating and instituting a system encouraging customer reporting; and adequate monitoring of customer complaints by well-trained and effective customer service representatives. Uber chose not to implement such precautions, nor did it warn passengers of the risk of being sexually assaulted in light of the fact that these safety precautions had not been implemented.

168. In failing to take these and other safety precautions designed to protect passengers from sexual predators driving for Uber, Uber breached its duty of reasonable care, negligently inflicting emotional harm upon Plaintiff, and acted recklessly and in conscious disregard of their safety.

169. Defendant's actions caused an impact to Plaintiff in the most direct and personal way possible, a sexual assault.

170. As a direct and legal result of Uber's negligent infliction of emotional distress, Plaintiff has suffered damages, including emotional and psychological distress, as well as economic, general, and non-economic damages.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against Defendant, UBER TECHNOLOGIES, INC, for a sum in excess of Fifty Thousand and NO/100 Dollars

($50,000.00), plus the costs of this action and hereby demands Trial by Jury on all issues so triable.

**Dated: March 21, 2023**

*Chris Ligori*

**CHRISTOPHER N. LIGORI, ESQUIRE**
CHRISTOPHER LIGORI & ASSOCIATES
117 S. Willow Ave.
Tampa, FL 33606
(813) 223-2929 : Telephone
(813) 251-6853: Facsimile
FLORIDA BAR # 0011045
Attorney for Plaintiff/2022-003
Service Email: Pleadings@ligorilaw.com